## Roemer v. Mottley.

(Decided April· 27, 1915.)

### Appeal from Warren Circuit Court.

1. Judicial Sales—Of Encumbered Property—Liens.—Where mortgaged land was sold under an execution, the purchaser obtained only a lien which was subordinate to the mortgage lien; and the purchaser at the execution sale could then bring an action in equity against the owner of the land and the prior lien-holders for the purpose of enforcing his own lien and selling the land to pay all the liens.

2. Judicial Sales—Suit to Sell Encumbered Property.—In an action under subsection 3 of section 694 of the Civil Code of Practice to enforce a lien on encumbered land, if all the liens be held by the same party, the court may order a sale of enough of the property to pay the debts then due, unless it appears that the land is not susceptible of advantageous division, or that for some other reason the sale would cause a sacrifice thereof, or seriously prejudice the interest of the defendants.

3. Judicial Sales—Indivisible Property—Lien Debt Not Due.—In an action under subsection 3 or section 694 of the Civil Code of Practice to enforce a lien on encumbered real property, it was error for the chancellor to order a sale of the property which was indivisible, and some of the lien debts were not due.

T. W. & R. C. P. THOMAS for appellant.

BRADBURN & BASHAM for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Affirming.

On December 5th, 1911, R. B. Chaney and others sold and conveyed to the appellee, J. F. Mottley, a tract of land in Warren County, containing 126 acres, for which Mottley paid $1,500.00 in cash, and executed his seven promissory lien notes, each for the sum of $223.45, and

due on the first days of January of the years extending from 1913 to 1919, both included. The Chaneys assigned all of said notes to James T. Blewett, and Blewett, in turn, assigned the second note to the Warren Lodge No. 225, I. O. O. F., of Rockfield, Ky.

In August, 1913, the appellant, Emile Roemer, obtained a judgment against the appellee Mottley for $195.45. Roemer caused an execution to issue upon said judgment from the Warren Circuit Court, which was levied upon the 126 acres of land; and, at the sale of said land under the execution, Roemer became the purchaser for $243.02, the amount of his debt, interest and costs.

As the land was encumbered with the purchase money lien notes due Blewett and the Warren Lodge, Roemer, by his purchase at the execution sale, obtained only a lien, which was subordinate to the liens of Blewett and the Warren Lodge. Ky. Stats., sec. 1709, sub-section 1; Kennedy v. Weber, 23 Ky. L. R., 879, 64 S. W., 514.

On February 3rd, 1914, Roemer instituted this action in equity against Mottley, Blewett and the Warren Lodge, setting up his own lien obtained under his purchase; called upon the other lien-holders to assert their liens; and asked a sale of the land to pay the liens upon it. Blewett and the Warren Lodge answered on March 3rd, 1914, asserting their lien notes as above described, and, making their answer a cross-petition, they likewise asked a sale of the property, and that their liens be adjudged superior to the lien of Roemer.

On the same day Mottley filed his answer, in which he admitted he owed the debts sued on; that he owned the land described in the petition; that he had paid $1,500.00 of the purchase money; that the lien debts of Blewett and the Warren Lodge were superior liens on the land as against all other parties; that the claim of Roemer was only a lien upon said land, and was inferior to Mottley's right to a homestead of the value of $1,000.00; and he asked that said homestead be assigned him before anything should be paid to Roemer.

On March 14th, 1914, a judgment was entered sustaining the lien claims of Blewett, the Warren Lodge, and Roemer, giving Blewett and the Warren Lodge first and superior liens upon the land to secure the payment of their respective debts, and postponing and reserving the question of priority between the lien debt of Roemer

and the homestead right of Mottley. This evidently was done for the reason that it would not become necessary to pass upon that question unless the land sold for a sum sufficient to more than pay the superior lien debts of Blewett and the Warren Lodge.

The judgment further recited that the land could not be divided without materially impairing its value, and that it was sold to satisfy the lien debts of Blewett and the Warren Lodge.

The land was appraised at $3,000.00 and was bought by Roemer for $2,000.00. Mottley thereupon filed exceptions to the sale; and the chancellor having sustained the exceptions and ordered a re-sale of the land, Roemer appeals.

The principal exception to the sale, and the only one necessary to be determined upon this appeal, insisted that it was error for the circuit court to adjudge a sale of the land before all the lien notes were due; and by their terms, five of them were not due.

Sub-section 3 of section 694 of the Civil Code of Practice, reads as follows:

"The plaintiff in an action to enforce a lien on real property shall state in his petition the liens, if any, which are held thereon by others, and make the holders defendants; and no sale of the property shall be ordered by the court prejudicial to the rights of the holders of any of the liens; and when it appears from the petition or otherwise, that several debts are secured by one lien, or by liens of equal rank, and they are all due at the commencement of the action, or become so before judgment, the court shall order the sale for the *pro rata* satisfaction of all of them; but if, in such case, the debts be owned by different persons and be not all due, the court shall not order a sale of the property until they all mature. If all such liens be held by the same party, the court may order a sale of enough of the property to pay the debts then due, unless it appear that it is not susceptible of advantageous division; or that, for some other reason, the sale would cause a sacrifice thereof, or seriously prejudice the interests of the defendants."

This section of the Code was construed in Gentry v. Walker, 93 Ky., 407; and it was there held that as some of the lien notes were not due, and the property was not susceptible of an advantageous division, no part of it

should have been sold until all the notes had become due, although they were all held by the same person.

In that opinion we said:

"The meaning of that construction as well as of the plain intent of the Legislature is that the whole of a tract of land cannot be sold to satisfy notes for purchase money unless all of them are due at the date of the judgment for sale; but to authorize the sale of a part there must be a division of the land. In this case no division of the land was made or ordered, but the whole of it was sold to satisfy, not merely the note due, but as stated in the judgment, to also satisfy the note not due, and the sale was actually made before one of them was due."

It was there further held that the question of the validity of the sale could be raised, as was done in this case, by filing exceptions to the confirmation of the sale.

The ruling in Gentry v. Walker, *supra,* is fully supported by Leopold v. Furber, 84 Ky., 214; Gunn v. Orndoff, 23 Ky. L. R., 2369, 67 S. W., 372, 68 S. W., 461; and Gray v. Grimm, 157 Ky., 606.

It has since been shown upon this appeal that the deed from Chaney to Mottley provided that all of the notes should become due, at the option of the holder, upon Mottley's failure to pay any one of them upon maturity; but the deed was not filed with the pleading, and the pleading did not contain any allegation that the notes not then due had become due and payable by reason of the stipulation contained in the deed, or otherwise.

As this right of precipitating the maturity of the notes was not taken advantage of by the holders of the notes, and was not relied upon in the pleading the case stands as though the deed contained no such stipulation. The sale having been made to satisfy the unmatured lien notes as well as those that were due, the case is controlled by section 694, sub-section 3 of the Code, and the ruling in Gentry v. Walker, *supra.*

It follows that the chancellor properly sustained the exceptions to the sale.

Judgment affirmed.